CM-010

This e-copy is the official court record (GC68150)

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Sarah E. Balkissoon (SBN 327066)<br>Mayer Brown LLP, 575 Market Street, Suite 2500 San Francisco, CA 94105 | **ELECTRONICALLY FILED**<br>Merced Superior Court<br>7/19/2024 6:18 PM<br>Amanda Toste<br>Clerk of the Superior Court<br>By: Brandon Chow, Deputy |

TELEPHONE NO.: 650-331-2000          FAX NO.: 650-331-2060

EMAIL ADDRESS: sbalkissoon@mayerbrown.com

ATTORNEY FOR *(Name):* Plaintiff Foster Poultry Farms, LLC

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF   MERCED**

STREET ADDRESS: 627 W. 21st Street

MAILING ADDRESS:

CITY AND ZIP CODE: Merced 95340

BRANCH NAME: Old Merced Courthouse

CASE NAME:

Foster Poultry Farms, LLC v. Pet Treats Holdings, DBA Phelps Industries, LLC

| **CIVIL CASE COVER SHEET** | **Complex Case Designation** | CASE NUMBER: 24CV-03660 |
|---|---|---|
| [x] **Unlimited** (Amount demanded exceeds $35,000) | [ ] **Limited** (Amount demanded is $35,000 or less) | [ ] Counter   [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | JUDGE:<br>DEPT.: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
- [ ] Auto (22)
- [ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- [ ] Asbestos (04)
- [ ] Product liability (24)
- [ ] Medical malpractice (45)
- [ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- [ ] Business tort/unfair business practice (07)
- [ ] Civil rights (08)
- [ ] Defamation (13)
- [ ] Fraud (16)
- [ ] Intellectual property (19)
- [ ] Professional negligence (25)
- [ ] Other non-PI/PD/WD tort (35)

**Employment**
- [ ] Wrongful termination (36)
- [ ] Other employment (15)

**Contract**
- [x] Breach of contract/warranty (06)
- [ ] Rule 3.740 collections (09)
- [ ] Other collections (09)
- [ ] Insurance coverage (18)
- [ ] Other contract (37)

**Real Property**
- [ ] Eminent domain/Inverse condemnation (14)
- [ ] Wrongful eviction (33)
- [ ] Other real property (26)

**Unlawful Detainer**
- [ ] Commercial (31)
- [ ] Residential (32)
- [ ] Drugs (38)

**Judicial Review**
- [ ] Asset forfeiture (05)
- [ ] Petition re: arbitration award (11)
- [ ] Writ of mandate (02)
- [ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
- [ ] Antitrust/Trade regulation (03)
- [ ] Construction defect (10)
- [ ] Mass tort (40)
- [ ] Securities litigation (28)
- [ ] Environmental/Toxic tort (30)
- [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- [ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- [ ] RICO (27)
- [ ] Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
- [ ] Partnership and corporate governance (21)
- [ ] Other petition *(not specified above)* (43)

2. This case [ ] is [x] is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. [x] monetary   b. [ ] nonmonetary; declaratory or injunctive relief   c. [x] punitive
4. Number of causes of action *(specify):* 4 (breach of contract, intentional interference with contract, conversion, unfair competition)
5. This case [ ] is [x] is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: July 19, 2024

Sarah E. Balkissoon

(TYPE OR PRINT NAME)                                   (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

This e-copy is the official court record (GC68150)

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

## CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
   Asbestos Property Damage
   Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
   Medical Malpractice– Physicians & Surgeons
   Other Professional Health Care Malpractice
Other PI/PD/WD (23)
   Premises Liability (e.g., slip and fall)
   Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
   Intentional Infliction of Emotional Distress
   Negligent Infliction of Emotional Distress
   Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
   Legal Malpractice
   Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
   Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
   Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
   Negligent Breach of Contract/ Warranty
   Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
   Collection Case–Seller Plaintiff
   Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
   Auto Subrogation
   Other Coverage
Other Contract (37)
   Contractual Fraud
   Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
   Writ of Possession of Real Property
   Mortgage Foreclosure
   Quiet Title
   Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
   Writ–Administrative Mandamus
   Writ–Mandamus on Limited Court Case Matter
   Writ–Other Limited Court Case Review
Other Judicial Review (39)
   Review of Health Officer Order
   Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
   Abstract of Judgment (Out of County)
   Confession of Judgment *(non-domestic relations)*
   Sister State Judgment
   Administrative Agency Award *(not unpaid taxes)*
   Petition/Certification of Entry of Judgment on Unpaid Taxes
   Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
   Declaratory Relief Only
   Injunctive Relief Only *(non- harassment)*
   Mechanics Lien
   Other Commercial Complaint Case *(non-tort/non-complex)*
   Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
   Civil Harassment
   Workplace Violence
   Elder/Dependent Adult Abuse
   Election Contest
   Petition for Name Change
   Petition for Relief From Late Claim
   Other Civil Petition

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

ELECTRONICALLY FILED
Merced Superior Court
7/19/2024 6:18 PM
Amanda Toste
Clerk of the Superior Court
By: Brandon Chow, Deputy

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

Pet Treat Holdings, dba Phelps Industries, LLC

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

Foster Poultry Farms, LLC

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):* Merced Superior Court

627 W 21st Street, Merced, CA 95340

**CASE NUMBER:**
*(Número del Caso):*

24CV-03660

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Sarah E. Balkissoon, Mayer Brown LLP, 575 Market Street, Suite 2500 San Francisco, CA 94105; 650-331-2000

DATE: ~~July 19, 2024~~   7/19/2024 6:18 PM   Amanda Toste   Clerk, by _____, Deputy
*(Fecha)*                                              *(Secretario)*                                    *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. [x] as an individual defendant.
2. [ ] as the person sued under the fictitious name of *(specify):*

3. [ ] on behalf of *(specify):*

   under: [x] CCP 416.10 (corporation)          [ ] CCP 416.60 (minor)
          [ ] CCP 416.20 (defunct corporation)   [ ] CCP 416.70 (conservatee)
          [ ] CCP 416.40 (association or partnership)  [ ] CCP 416.90 (authorized person)
          [ ] other *(specify):*
4. [x] by personal delivery on *(date):*

**Page 1 of 1**

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
*www.courts.ca.gov*

This e-copy is the official court record (GC68150)

This e-copy is the official court record (GC68150)

1    MAYER BROWN LLP
     Carmine R. Zarlenga (*pro hac vice* forthcoming)
2    *czarlenga@mayerbrown.com*
     1999 K Street, N.W.
3    Washington, DC 20006
     Telephone: (202) 263-3000
4
     Sarah E. Balkissoon (SBN 327066)
5    *sbalkissoon@mayerbrown.com*
     575 Market Street, #2500
6    San Francisco, CA 94105
     Telephone: (650) 331-2000
7
     Attorneys for Plaintiff
8    FOSTER POULTRY FARMS, LLC

ELECTRONICALLY FILED
Merced Superior Court
7/19/2024 6:18 PM
Amanda Toste
Clerk of the Superior Court
By: Brandon Chow, Deputy

9               **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

10                          **COUNTY OF MERCED**

                                                    24CV-03660

11   FOSTER POULTRY FARMS, LLC, a          Case No.: _____
     California limited liability company,
12                                          **COMPLAINT FOR:**
              Plaintiff,
13                                          **BREACH OF CONTRACT**
         vs.
14                                          **INTENTIONAL INTERFERENCE WITH**
                                            **CONTRACUTAL RELATIONS**
15   PET TREAT HOLDINGS, DBA PHELPS
     INDUSTRIES, LLC, a Massachusetts limited  **CONVERSION**
16   liability company, DOES ONE THROUGH
     TEN inclusive,                         **UNFAIR COMPETITION**
17
              Defendants.                   UNLIMITED CIVIL
18

19        Plaintiff Foster Poultry Farms, LLC ("Plaintiff" or "Foster Farms"), by and through its

20   attorneys, hereby allege against defendant Pet Treat Holdings, dba Phelps Industries, LLC

21   ("Phelps" or "Defendant"), as follows:

22                          **SUMMARY OF DISPUTE**

23        1.    Phelps and Foster Farms entered into a contract manufacturing agreement whereby

24   Phelps agreed to manufacture dog treats according to certain specifications and deliver the finished

25   product directly to Foster Farms' number one customer—Costco Wholesale Corporation

26   ("Costco"). Instead, Phelps breached its contractual obligations. Phelps manufactured a defective

27   product, failed to mitigate damages or cure the defect, and then proceeded to hold the product

28

                                                                            COMPLAINT

This e-copy is the official court record (GC68150)

hostage and demanded a ransom to fulfill its remaining contractual obligations to Foster Farms. Phelps' breaches have harmed Foster Farms financially and also harmed the contractual relationship between Foster Farms and Costco.

2.      At all times, Phelps was fully aware of the contractual relationship between Foster Farms and Costco. Phelps acknowledged receipt of the written contracts between Foster Farms and Costco before the events that gave rise to this Complaint.

### THE PARTIES

3.      Plaintiff Foster Farms, a poultry company, is a California limited liability company with its principal place of business in Livingston, California.

4.      Defendant Phelps is a Massachusetts limited liability company with its principal place of business in Rockford, Illinois, and manufacturing facility in Wisconsin. Phelps manufactures various goods, including dog treats.

5.      Defendants DOES ONE through TEN inclusive are sued herein pursuant to CCP § 474. The true names and capacities of defendants DOES ONE through TEN are unknown to Plaintiff, and Plaintiff will seek leave of court to amend this complaint to allege such names and capacities as soon as they are ascertained.

### JURISDICTION AND VENUE

6.      The Court, as a court of general jurisdiction, has subject matter jurisdiction over this dispute. No statutory exceptions to jurisdiction exist.

7.      The Court has personal jurisdiction over Defendant because the claims asserted in this Complaint arise from Phelps' conduct aimed at Foster Farms in California, the contract at issue was ratified in California, and Foster Farms suffered damages in California.

8.      Venue is proper in Merced County because a substantial part of the acts and omissions giving rise to this Complaint and Foster Farms' damages occurred at Foster Farms' headquarters in Livingston, Merced County, California. Cal. Code of Civ. Proc. § 395.5.

### FACTUAL ALLEGATIONS

**The Contract Manufacturing Agreement**

COMPLAINT

This e-copy is the official court record (GC68150)

9.      Costco is a key customer of Foster Farms for numerous products. On or about October 11, 2023, Costco and Foster Farms entered into a written supplier agreement (the KS Chicken Jerky Program Agreement) and on or about November 1, 2023 an addendum (collectively the "Basic Supplier Agreement" or "BSA"), whereby Foster Farms agreed to supply Costco with the Kirkland Signature Jerky Cuts Chicken Recipe product (the "Product"). For years, Costco has been trying to get this product on its shelves; the Product was important to Costco. Foster Farms could provide the main ingredient for the Product—chicken—but it relied on and contracted with Phelps to manufacture and ship the Product. Unlike Foster Farms, Phelps is in the business of manufacturing dog treats.

10.      On or about February 1, 2024, Foster Farms entered into a Contract Manufacturing Agreement (the "CMA") with Phelps whereby Phelps agreed to manufacture the Product and deliver it directly to Costco. Phelps was aware that the Product was subject to the BSA between Costco and Foster Farms because it received copies of the agreement and was a signatory to the November 2023 BSA addendum. *See* Costco Wholesale Private Label Addendum to Basic Supplier Agreement, Annex B Subcontractor Agreement ¶ 3. On information and belief, Phelps knew that the Product was important to Costco.

11.      In its very first section, the CMA required that Phelps "manufacture and package the Product in compliance with the Specifications . . . attached as Exhibit C and made part of [the CMA]." CMA § 1. The Specifications included a "Guaranteed Analysis" of the Product that Phelps developed for the Product label. *See* CMA p. 17.

12.      Foster Farms was responsible for providing Phelps with a production timeline. *See* CMA § 4 ("Foster shall provide Co-Manufacturer with a written, rolling twelve (12) week production forecast . . . for the Product. . . . Co-manufacturer will make best efforts to accommodate additional volume as needed. The first two weeks of the twelve (12) week production plan will be committed in advance by purchase order and may only be changed by mutual written agreement."). And the CMA designated Foster Farms as the vendor for the chicken ingredient in the Product. *See, e.g.,* CMA p. 19.

COMPLAINT

This e-copy is the official court record (GC68150)

13.     The CMA did not require Foster Farms to provide a certificate of analysis to Phelps (*i.e.*, a certification that the raw material conformed to certain specifications) for the chicken it provided. Nor did it require Foster Farms to provide raw material (chicken) with a specific fat/protein ratio. *See* CMA p. 19.

14.     Under the CMA, Phelps was solely responsible for *ensuring* that the Product was manufactured according to the specifications (*e.g.*, that the Product contained the agreed-upon materials at the appropriate ratios), and had a duty to inspect the product. "Co-Manufacturer shall be responsible for inspecting all ingredients and packaging materials purchased from suppliers prior to use to confirm that such ingredients and packaging materials conform with Foster's formulations, quality control and other standards, specifications, manufacturing processes and procedures . . . (. . . collectively, the "Specifications"). . . . Co-Manufacturer shall have final responsibility for accepting or rejecting any ingredients and packaging materials that (a) do not conform to the Specifications, (b) were not prepared in accordance with the Specifications, (c) do not conform with the other terms and conditions of this Agreement, . . . For clarity, ingredient and packaging inspection completed by Co-Manufacturer should include verification that there is . . . no non-conformities . . . etc. The use of non-conforming . . . ingredients or packaging materials in the Products will entitle Foster to reject or return such Products. . . ." CMA § 8. Accordingly, Phelps was responsible for ensuring that the Product had the "Guaranteed Analysis" Phelps had developed. CMA p. 17.

15.     Under the CMA, Phelps would bear the risk of loss or damage caused by the "manufacturing, processing, packaging, or quality of the Product." *See* CMA § 9. Specifically, the CMA provided that "Co-Manufacturer shall bear the risk of loss or damage to any of the Product that occurs before the shipment of Product to Foster or Foster designated recipient. . . . Co-Manufacturer will be required to absorb the cost of any and all Product, including transportation and disposal costs, deemed defective or unacceptable by Foster as a result of complaints received or discovery by Foster or Co-Manufacturer." *Id*.

This e-copy is the official court record (GC68150)

16.     Significantly, Phelps agreed to "use commercially reasonable efforts to provide storage of Product free of charge," without any noted exceptions. Additionally, the CMA provides that "Co-Manufacturer will notify Foster in writing if it lacks, or believes it will lack, warehouse space." CMA, Exhibit A § 6.

**Phelps Breaches the CMA and Interferes with Foster Farms' Agreement with Costco**

17.     In accordance with the CMA, Foster Farms provided Phelps with chicken raw material. Phelps received the chicken raw material and accepted all deliveries from Foster Farms. Phelps began production, but contrary to best practices and its obligations under the CMA, it did not run periodic testing or inspection of the Product during production. On May 20, 2024, Foster Farms sent Phelps a production plan and a written purchase order for $966,288.00.

18.     On information and belief, Phelps did not test or inspect the Product, in accordance with the CMA, prior to shipment to Costco. Phelps has not explained its failure to do so. Phelps commenced shipping the Product to Costco in approximately March 2024. In so doing, Phelps represented that the Product conformed with the required specifications, and Foster Farms relied on Phelps' representation.

19.     On or about April 8, 2024, Phelps suddenly demanded that Foster Farms provide certificates of analysis for its previous shipments of raw materials, even though under the CMA Phelps is solely responsible for ensuring product conformity "formulations, quality control and other standards, specifications, manufacturing processes and procedures." CMA § 8.

20.     Foster Farms declined to provide Phelps any certificates of analysis and had no obligation to do so. Phelps did not provide any reason for its sudden request.

21.     Instead, on or about May 15, 2024 a third party ran a test that determined that the Product Phelps had shipped did not conform with the required specifications found within the CMA and as approved by Costco for the Product. Further, the Product did not conform with the General Analysis Phelps had developed, the parties had agreed to, and Phelps had included on the Product packaging. In other words, Phelps did not manufacture the Product according to the specifications outlined in the CMA.

COMPLAINT

This e-copy is the official court record (GC68150)

22.     The third party reported the issue to Costco and Costco told Foster Farms and Phelps. Given the issue, Foster Farms told Phelps to cease all production and stop all outgoing shipments to Costco. Costco rejected shipments of the Product it had received and returned them to Phelps for reissuance pursuant to the specifications outlined in Exhibit C of the CMA.

23.     Due to Phelps' production issues, Foster Farms was unable to fulfill its forecast with Costco.

24.     To prevent the breakdown of its contractual relationship with Costco, Foster Farms offered to resolve the issues with Costco by having Phelps fix the formulation at no cost to Costco.

25.     To mitigate damages, Foster Farms began looking for resale avenues for the Product. Phelps proposed that it "rework" the Product (*i.e.*, remove the final packaging from non-conforming Products and repackage the Products with revised packaging) *for an additional cost*. Not only was Phelps contractually required to absorb the cost of a potential rework, and all other costs associated with the rejected Product, but reworking the Product before a resale avenue and any resale specifications were confirmed would waste time and (Foster Farms') money. *See* CMA § 8 ("Co-Manufacturer will be required to absorb the cost of any and all Product, including transportation and disposal costs, deemed defective or unacceptable by Foster as a result of complaints received or discovery by Foster or Co-Manufacturer."). Foster Farms rejected Phelps' offer.

26.     On July 9, 2024, Foster Farms notified Phelps that Foster Farms had a potential resale avenue for the returned Product "as is" and needed to pick up the Product Phelps was holding. Haulers contacted Phelps to arrange the pickup, but Phelps refused.

27.     Instead of allowing Foster Farms to resell the Product or, when necessary, cover the cost of reworking the Product, Phelps both held the nonconforming products for ransom and has done nothing to address its failure to comply with the CMA.

28.     Phelps told Foster Farms that it would not ship any finished or updated Product and had placed Foster Farms' account on "hold" until further notice.

6

COMPLAINT

This e-copy is the official court record (GC68150)

29.     Phelps demanded that Foster Farms pay it $8 million and agree to pay all past and future invoices upfront, before Phelps would ship the Product, allow Foster Farms to pick up the Product, rework the Product if necessary, or work with Foster Farms in any capacity. Phelps is contractually responsible for absorbing these costs, and now it is preventing Foster Farms from reselling or in any way recouping the cost of the defective Product. *See* CMA § 8. Further, Phelps began to charge Foster Farms for storage of the ingredients remaining in their facility, in breach of Exhibit A, § 6 of the CMA. To protect its investment, Foster Farms has had no choice but to pay Phelps storage costs for June.

30.     Due to Phelps' delay and refusal to correct its mistakes, Costco indicated that it would allow other suppliers to bid for the Kirkland Signature Jerky Cuts Chicken Recipe product contract.

## CAUSES OF ACTION

### COUNT I

### BREACH OF CONTRACT

31.     Foster Farms incorporates by reference and realleges as though fully set forth herein each and every allegation as set forth in the preceding paragraphs of the Complaint.

32.     On or about February 1, 2024, Phelps and Foster Farms entered into the CMA, a valid and enforceable contract.

33.     Foster Farms has performed its obligations under the CMA.

34.     Pursuant to the CMA, Phelps was required to manufacture the product according to certain specifications.

35.     Defendant materially breached the CMA by failing to manufacture the Product according to the specifications described in the CMA.

36.     Defendant materially breached the CMA by failing to conduct appropriate periodic testing of the Product in its manufacturing.

37.     When Phelps was advised that the Products it manufactured did not conform to the required contractual specifications, Phelps failed to mitigate damages or allow Foster Farms to

COMPLAINT

This e-copy is the official court record (GC68150)

1   mitigate damages. Phelps' refusal to take responsibility for its actions is causing ongoing harm to

2   Foster Farms and its relationship with Costco.

3       38.   Defendant further materially breached the CMA by refusing to ship the Product and

4   by demanding that Foster Farms pay upwards of $8 million in storage fees and other fees.

5       39.   Accordingly, as a result of Defendant's actions, Foster Farms has been damaged in

6   an amount to be determined at trial, including, but not limited to, loss of sales to Costco, associated

7   loss of revenues, damage to the customer relationship between Foster Farms and Costco (including

8   damage to goodwill and reputation), the cost to rework and resell the Product, to remove the

9   packaging from non-conforming products and repackage the product once fixed, the cost of

10  storage, and by causing Foster Farms to lose its supplier agreement with Costco and its goodwill

11  and reputation with its number one customer.

12                                **COUNT II**

13          **INTENTIONAL INTERFERENCE WITH CONTRACUTAL RELATIONS**

14      40.   Foster Farms incorporates by reference and realleges as though fully set forth herein

15  each and every allegation as set forth in the preceding paragraphs of the Complaint.

16      41.   On or about October 11 2023, Foster Farms entered into a Basic Supplier

17  Agreement with Costco for the Product.

18      42.   On or about November 1, 2023, Foster Farms, Costco, and Phelps signed Annex B

19  Subcontractor Agreement to the Costco Wholesale Private Label Addendum to BSA, pursuant to

20  which Phelps would manufacture the Product.

21      43.   Pursuant to Annex B, Phelps "acknowledge[d] that it has received a copy of the

22  Supplier Agreements [between Costco and Foster Farms] and the Costco Wholesale Supplier Code

23  of Conduct." Phelps was therefore aware of the BSA between Foster Farms and Costco. It was

24  additionally aware that it was a subcontractor and the sole manufacturer of the Product. Phelps

25  knew that properly manufacturing the Product was crucial to ensuring that the BSA between Foster

26  Farms and Costco was continuously effectuated.

27      44.   Costco approved Phelps as a subcontractor to manufacture the Product.

28

                                                    COMPLAINT

This e-copy is the official court record (GC68150)

45.     Phelps knew that its failure to conduct appropriate quality control or periodic testing would frustrate both the CMA and BSA from being effectuated and would therefore result in breaches of those agreements.

46.     Phelps knew that its refusal to honor its obligations under the CMA and demand that Foster Farms issue payment for over $8 million for storage fees in contradiction with the CMA would render performance of the BSA impossible and/or unreasonably expensive.

47.     Phelps knew that its refusal to honor its obligations under the CMA would render performance of the BSA impossible and/or unreasonably expensive.

48.     Phelps knew that its conduct was certain to disrupt performance of the BSA between Foster Farms and Costco because it refused to manufacture the Product according to the required specifications.

49.     Foster Farms has suffered, and continues to suffer, significant financial and reputational harms as a direct result of Defendant's conduct. As recently as July 15, 2024, Costco demanded delivery of the Products that Phelps is obligated to manufacture and supply. The intentional conduct of Phelps in refusing to take any action to provide the Products in conformity with its contractual obligations is having a direct adverse impact on the contractual relationship between Foster Farms and Costco.

**COUNT III**

**CONVERSION**

50.     Foster Farms incorporates by reference and realleges as though fully set forth herein each and every allegation as set forth in the preceding paragraphs of the Complaint.

51.     Due to Phelps' mismanagement and improper manufacturing of the Product, Foster Farms had, and continues to have, the right to take possession of the Product.

52.     Defendant substantially interfered with and foreclosed the ability of Foster Farms to take possession of the Product by refusing to return it after Foster Farms repeatedly communicated their desire and intent to possess the Product and effectuate Product shipments back to Foster Farms facilities.

COMPLAINT

This e-copy is the official court record (GC68150)

53.     Phelps refusal to return the Product by refusing to permit haulers engaged by Foster Farms to obtain and transport the Product back to Foster Farms facilities has thus negated, and continues to negate, the Products' usability and value. Defendants' conduct has prevented Foster Farms from all rework, sales, and recovering costs related to the returned Product.

54.     Foster Farms did not, and does not, consent to Defendant's continued possession of the Product.

55.     Foster Farms was, has suffered, and continues to suffer significant harm as a direct and proximate result of Defendant's refusal to return the Product.

56.     Defendant acted, and continues to act, with fraud and malice, including specifically to exploit and take unfair advantage of Foster Farms and deprive Foster Farms of its rights. Foster Farms is therefore entitled to punitive damages in an amount to be determined at trial to punish Phelps and to deter such conduct in the future.

**COUNT IV**

**VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW**

57.     Foster Farms incorporates by reference and realleges as though fully set forth herein each and every allegation as set forth in the preceding paragraphs of the Complaint.

58.     Phelps is a "person" within the meaning of California Business and Professions Code § 17201.

59.     As detailed above, Phelps has engaged in and continues to engage in unlawful, unfair, and fraudulent business acts or practices, which constitute unfair competition within the meaning of § 17200 of the California Business and Professions Code. Phelps' violation of the CMA and intentional interference with the contractual relationship between Foster Farms and Costo constitute unlawful, unfair, and fraudulent business acts or practices.

60.     These unlawful, unfair, and fraudulent business acts or practices present a continuing threat to Foster Farms.

10

COMPLAINT

This e-copy is the official court record (GC68150)

61.    As a direct and proximate result of Phelps' unlawful, unfair, and fraudulent business practices, Foster Farms has suffered injury in fact and has lost money in an amount to be determined at trial. Further, Phelps continues to hold the Product belonging to Foster Farms.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays for judgment against Defendant as follows:

1.  For damages in an amount to be proven at trial;

2.  For punitive damages;

3.  For an award of Plaintiff's costs, including but not limited to attorney's fees, incurred herein;

4.  Interest as may be provided by law; and

5.  Any and all such other relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Foster Farms demands a trial by jury of all issues so triable.


Dated:  July 19, 2024                                MAYER BROWN LLP


By: /s/
        Sarah E. Balkissoon

MAYER BROWN LLP
Carmine R. Zarlenga (*pro hac vice*
forthcoming)
*czarlenga@mayerbrown.com*
1999 K Street, N.W.
Washington, DC 20006
Telephone: (202) 263-3000

Sarah E. Balkissoon (SBN 327066)
*sbalkissoon@mayerbrown.com*
575 Market Street, #2500
San Francisco, CA 94105
Telephone: (650) 331-2000

*Attorneys for Plaintiff*

COMPLAINT

# SUPERIOR COURT OF CALIFORNIA COUNTY OF MERCED

# Alternative Dispute Resolution (ADR) Information Guide

Adapted by permission from the
Administrative Office of the Courts' publication:
**"Alternative Dispute Resolution, *Options for Resolving Your Dispute*"**

ADR INFORMATION GUIDE

## There are Alternatives to Going to Trial

Did you know that most of all civil cases filed in court are resolved without going to trial? Many people use processes other than trial to resolve their disputes. These alternative processes, known as Alternative Dispute Resolution or ADR, are typically less formal and adversarial than trial, and many use a problem-solving approach to help the parties reach agreement.  Because of these potential advantages, it is worth considering using ADR early in a lawsuit, **or even before you file a lawsuit.**

## Potential Advantages of ADR

Here are some potential advantages of using ADR:

❖ **Saves Time and Money:** A dispute often can be settled or resolved much sooner with ADR, allowing parties to save money on attorney fees, court costs, and experts' fees.  An ADR fee of $300 to be shared by the Parties is charged by the Court for its Judicial Arbitration and Early Mediation Programs – this fee is not waived in cases involving successful Fee Waiver Applications.

❖ **Increases Control Over the Process and the Outcome**: In ADR, parties typically play a greater role in shaping both the process and its outcome. In ADR, parties have the opportunity to tell their side of the story just as they do at trial. Some ADR processes, such as mediation, allow the parties to fashion creative resolutions that may not be available in a trial. Other ADR processes, such as arbitration, allow the parties to choose a qualified person or expert in a particular field to decide the dispute.

❖ **Preserves Ongoing Relationships:** ADR can be a less adversarial way to resolve a dispute. For example, an experienced mediator can help the parties effectively communicate their needs and point of view to the other side. This can be an important advantage where the parties have a relationship to preserve.  For example, in cases involving business partners, family members or customer-vendor relationships.

❖ **Increases Satisfaction:** In a trial, there is typically a winner and a loser.  ADR can help the parties find win-win solutions and achieve their respective goals. This, along with other potential advantages of ADR, may increase the parties' overall satisfaction with both the dispute resolution process and the outcome.

❖ **Fosters Attorney-Client Relationships:** Parties and Attorneys may also benefit from ADR by exploring their roles as problem-solvers and counselors rather than merely acting as adversaries. Quick, cost-effective, and satisfying resolutions are likely to produce happier parties and stronger relationships with their attorneys.

## What are the ADR Options?

The most commonly used ADR processes are Mediation, Arbitration, Neutral Case Evaluation, and Settlement Conferences.

### ♦ Private Mediation

In mediation, an impartial person called a "mediator" helps the parties try to reach a mutually acceptable resolution of the dispute. The mediator does not decide the dispute but remains helps the parties communicate so they can settle the dispute themselves.  Mediation leaves control of the outcome with the parties.

<u>Cases for Which Mediation May Be Appropriate</u>: Mediation may be particularly useful when parties have a relationship they want to preserve. So when family members, neighbors, or business partners have a dispute, mediation may be the ADR process to use.  Mediation is also effective when emotions are getting in the way of resolution. An effective mediator can listen to the parties and help them communicate in an effective and non-confrontational manner.

### ♦ Private Arbitration

In arbitration, a neutral person called an "arbitrator" hears arguments and evidence from each side and then decides the outcome of the dispute. Arbitration is typically less formal than a trial, and the rules of evidence may be relaxed.

Arbitration may be either "binding" or "non-binding." Binding arbitration means that the parties waive their right to a trial and agree to accept the arbitrator's decision as final.  Non-binding arbitration means that the parties are free to request a trial if they reject the arbitrator's decision.  Arbitrations may be structured to set maximum and minimum awards, known as "High-Low Arbitrations".  This allows the plaintiff to have a guaranteed minimum recovery and the defendant to rely on a guaranteed absolute maximum exposure, regardless of how the arbitration unfolds.

<u>Cases for Which Arbitration May Be Appropriate</u>: Arbitration is best for cases where the parties want another person to decide the outcome of their dispute for them but would like to avoid the formality, time, and expense of a trial. It may also be appropriate for complex matters where the parties want a decision-maker who has training or experience in the subject matter of the dispute.

### ♦ Neutral Case Evaluation

In Neutral Case Evaluation, each party gets a chance to present the case to a neutral person called an "evaluator." The evaluator then gives an opinion on the strengths and weaknesses of each party's evidence and arguments and about how the dispute could be resolved.  Although the evaluator's opinion is not binding, the

parties typically use it as a basis for trying to negotiate a resolution of the dispute. Even if not successful in resolving the case, Neutral Case Evaluation can lead to use of other ADR procedures, such as arbitration or mediation, especially when undertaken early in the litigation.

<u>Cases for Which Neutral Case Evaluation May Be Appropriate</u>:
Neutral Case Evaluation is appropriate for most cases, and may be most useful in cases that involve technical issues that require special expertise to resolve or in cases that the only significant issue is the amount of damages.

### ♦ Settlement Conferences

In Settlement Conferences, the parties and their attorneys meet with the judge or a neutral person called a "settlement officer" to discuss possible settlement of their dispute. The judge or settlement officer does not make a decision in the case but assists the parties in evaluating the strengths and weaknesses of the case and in negotiating a settlement. Settlement Conferences are appropriate in any case where settlement is an option. Mandatory Settlement Conferences, ordered by the Court, are often held near the date a case is set for trial.

## ADR Programs Offered by Merced Superior Court

Merced Superior Court provides two forms of ADR programs through its Early Mediation Program (EMP) and its Judicial Arbitration Program, described below.

### ♦ Merced Superior Court's *Early Mediation Program* (EMP)

**Civil unlimited cases are generally assigned to the Early Mediation Program.** Merced Superior Court provides parties with an opportunity to mediate cases before extensive fees and costs are spent (see "Private Mediation" below, for a description of how Mediation works).  The EMP allows parties the opportunity to obtain the services of a mediator for only a $300 fee, to be shared by the parties. Because the parties have not generally committed extensive resources and time to a case at this early stage, resolution can be achieved at a lower cost and possibly with more satisfying results.  Early Mediation Program Forms are available at: <u>www.merced.courts.ca.gov</u>.  Here's how the EMP works:

- Civil Unlimited Cases are generally assigned to the Early Mediation Program, unless an opt-out form is <u>filed by any party</u> within 120 days from the filing of the Complaint.  **<u>Timely service of the Complaint (within 60 days of filing) is essential to comply with the Early Mediation Program requirements.</u>**

- The $300 EMP fee must be paid to the Civil Clerk's Office within 120 days of filing the lawsuit, and the Parties are to schedule Early Mediation <u>before the first CMC</u> (set approximately 150 days from the filing of the Complaint).

Plaintiff is to collect the EMP fee, to be shared equally by the Parties or as the Parties agree, and timely submit the entire amount to the Civil Clerk's Office.

- Parties then select a Mediator from Merced Superior Court's ADR Neutral List available on the Court's website.  Parties must notify the ADR Office immediately if a mediator cannot be agreed upon.  The ADR Office will then provide the parties with a mediator short list where each party may de-select a mediator and report back to the ADR Coordinator within 5 days.

- In preparation for the Early Mediation, Parties are to draft a Mediation Statement of <u>no more than 5 pages</u> outlining the Party's position including agreed to and disputed facts.  The Mediation Statement is to be sent to the mediator one (1) week before the Early Mediation (<u>do not file</u> with the Court).

- After the Early Mediation, Parties are to fill out a confidential Mediation Survey and send it to the ADR Office of the Court.

♦ **Merced Superior Court's *Judicial Arbitration Program***

Merced Superior Court provides parties with an opportunity to arbitrate their cases for a $300 fee before extensive fees and costs are spent.  This program is generally ordered in cases where the amount in controversy is equal or less than $50,000.  The Parties may agree to waive this cap and allow the possibility of a larger award.  The Parties may also agree to make the Arbitration Award binding, thereby eliminating the need of further litigation.  Otherwise, after Judicial Arbitration, the Parties receive an Award that they may accept or reject.

## Serving the ADR Information Packet

The ADR Information Packet, which is provided to all Plaintiffs initiating a lawsuit, consists of:

►The ADR Information Guide
►The ADR Stipulation Form

The Plaintiff must serve a copy of the ADR Packet on each Defendant with the Complaint.  Cross-Complainants must serve a copy of the ADR Packet on all new Cross-Defendants with the Cross-Complaint.  The ADR Information Packet is available in the Civil Clerk's Office or online at www.merced.courts.ca.org.

## Who You Can Call

For additional information, please contact the following:

►State Bar of California (415) 538-2000
►Calif. Dept. of Consumer Affairs, Consumer Info. Center, (800) 952-5210
►Merced Superior Court, ADR Office, (209) 725-4249
►Merced County Bar Association, (209) 722-8129
►Self Help Information on line: http://www.courtinfo.ca.gov/selfhelp

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, state bar number, and address) | FOR COURT USE ONLY |
|---|---|
| TELEPHONE NO.:                    FAX NO. (*Optional*):<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name):<br>**SUPERIOR COURT OF CALIFORNIA, COUNTY OF MERCED**<br>627 W. 21st Street<br>Merced, CA 95340<br>(209) 725-4111 | |
| PLAINTIFF/PETITIONER:<br><br>DEFENDANT/RESPONDENT: | |

| STIPULATION AND ORDER REFERRING MATTER TO ALTERNATIVE DISPUTE RESOLUTION | CASE NUMBER: |
|---|---|
| (Check one): ☐ **UNLIMITED CASE**<br>(Amount demanded exceeds $25,000)   ☐ **LIMITED CASE**<br>(Amount demanded is $25,000 or less) | Assigned Judge:<br><br>Case Category (please circle):<br>I    II    III |

THIS ADR STIPULATION IS TO BE FILED WITH THE COURT <u>WITHIN</u> <u>FIFTEEN (15)</u> <u>CALENDAR</u> <u>DAYS</u>
OF THE PARTIES' AGREEMENT TO PARTICIPATE IN ADR

Pursuant to Cal. Rules of Court, Rule 3.221 and having met and conferred pursuant to Rules of Court, Rule 3.724, the parties hereby stipulate to refer the case to the following Alternate Dispute Resolution Process:

☐  Mediation                              ☐  Neutral Case Evaluation

☐  Binding Private Arbitration            ☐  Private Settlement Conference

☐  Non-binding Private Arbitration        ☐  Early Mediation (fee: $300)*

The ADR process will be conducted by (name of individual):_____

Provider's Address: _____

Provider's Telephone: _____ Fax: _____ E-Mail:_____

The ADR process will be completed on, or before, (date):_____

The next Case Management Conference is scheduled for (date/time):_____

* Parties not already assigned to **Early Mediation** may execute and file this Stipulation as soon as the case is at issue.  Upon filing this Stipulation, an early Case Management Conference will be scheduled by the Court and the parties will have the opportunity to attempt settlement before extensive costs and fees are undertaken.  The fee for Early Mediation is $300, to be shared by the Parties and paid to the Court in full with the filing of this Stipulation.  The $300 fee is <u>not</u> waived for successful Fee Waiver Applicants.

The Parties further stipulate and agree that:

1. All parties have reached agreement as to the payment of fees of the ADR provider;

2. All Parties have been served and submit to the jurisdiction of the Court;

3. All Parties have agreed to a specific discovery plan to make the ADR process meaningful;

4. Copies of this Stipulation and self-addressed stamped envelopes are provided to the Court for returning file-stamped copies to counsel and the parties **along with the $20.00 fee for filing a Stipulation with Order per *Govt. Code* §70617(c) (2)**;

5. Early Mediation fee of $300 total is submitted with this Stipulation (if applicable); and

6. All Parties are aware that a request for continuance of the ADR completion date established by this Stipulation and Order is discouraged, and the request may be denied by the Court.

...............................................................
Type or print name of ☐ Party without attorney ☐ Attorney for
☐ Plaintiff/Petitioner ☐ Defendant/Respondent/Contestant

_____
**(Date and Sign)** Attorney or Party without
attorney (Sign in blue ink)

...............................................................
Type or print name of ☐ Party without attorney ☐ Attorney for
☐ Plaintiff/Petitioner ☐ Defendant/Respondent/Contestant

_____
**(Date and Sign)** Attorney or Party without
attorney (Sign in blue ink)

...............................................................
Type or print name of ☐ Party without attorney ☐ Attorney for
☐ Plaintiff/Petitioner ☐ Defendant/Respondent/Contestant

_____
**(Date and Sign)** Attorney or Party without
attorney (Sign in blue ink)

...............................................................
Type or print name of ☐ Party without attorney ☐ Attorney for
☐ Plaintiff/Petitioner ☐ Defendant/Respondent/Contestant

_____
**(Date and Sign)** Attorney or Party without
attorney (Sign in blue ink)

☐ Additional signatures are attached

---

Pursuant to the Stipulation of the parties, the above case is ordered to ADR as described and agreed to above. If applicable, an early Case Management Conference is set for _____.

Dated:_____          _____ ___

☐ **DONALD J. PROIETTI, JUDGE**
☐ **BRIAN L. McCABE, JUDGE**
☐ **JEANNE SCHECHTER, COMMISSIONER**
☐ **DAVID FOSTER, TEMPORARY JUDGE**
☐

---

**POS-015**

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY: STATE BAR NO.: SBN 327066<br>NAME: Sarah E. Balkissoon<br>FIRM NAME: r Brown LLP<br>STREET ADDRESS: 575 Market Street, Suite 2500<br>CITY: San Francisco          STATE: CA     ZIP CODE: 94105<br>TELEPHONE NO.: :31-2000        FAX NO.: 650-331-2060<br>E-MAIL ADDRESS: :issoon@mayerbrown.com<br>ATTORNEY FOR (Name): Plaintiff Foster Poultry Farms, LLC | *FOR COURT USE ONLY* |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** Merced
STREET ADDRESS: 627 W. 21st Street
MAILING ADDRESS:
CITY AND ZIP CODE: Merced 95340
BRANCH NAME: Old Merced Courthouse

Plaintiff/Petitioner: Foster Poultry Famrs, LLC
Defendant/Respondent: Pet Treat Holdings, DBA Phelps Industries, LLC

| | |
|---|---|
| **NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL** | CASE NUMBER:<br>24CV-03660 |

TO *(insert name of party being served):*  Pet Treat Holdings, DBA Phelps Industries, LLC

---

**NOTICE**

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

---

Date of mailing: August 16, 2024

Sarah E. Balkissoon
(TYPE OR PRINT NAME)        ▶        (SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

## ACKNOWLEDGMENT OF RECEIPT

This acknowledges receipt of *(to be completed by sender before mailing):*

1. ☐ **6**  A copy of the summons and of the complaint.
2. ☐  Other *(specify):*

*(To be completed by recipient):*

Date this form is signed:  August 29, 2024

Adam S. Hamburg, counsel for Pet Treat Holdings, dba Phelp Industries LLC        ▶
(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY,
ON WHOSE BEHALF THIS FORM IS SIGNED)              (SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF
                                                 ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

---

**Page 1 of 1**

Form Adopted for Mandatory Use
Judicial Council of California
POS-015 [Rev. January 1, 2005]        **NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL**        Code of Civil Procedure,
§§ 415.30, 417.10
*www.courtinfo.ca.gov*

**For your protection and privacy, please press the Clear This Form button after you have printed the form.**        | Print this form | Save this form |        | Clear this form |